UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ZEFCOM, LLC d/b/a/ TELISPIRE PCS,<br><br>Plaintiff,<br><br>v.<br><br>UFI, LLC AND TIMOTHY HENSON,<br><br>Defendants. | Civil Action No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Zefcom, LLC d/b/a Telispire PCS ("Telispire") files this Original Complaint against Defendants UFI, LLC ("UFI") and Timothy Henson ("Henson," and together with UFI, "Defendants").

## PARTIES

1. The plaintiff Telispire is a Delaware limited liability company having its principal place of business at 4245 Kemp Boulevard, Suite 220, Wichita Falls, Texas. Telispire is a mobile virtual network enabler ("MVNE") that provides wireless voice and data services (the "Services") directly or indirectly to resellers and mobile virtual network operators ("MVNOs") in certain geographic areas throughout the United States and its territories for resale to the end users of the MVNOs.

2. The defendant UFI, on information and belief, purports to be a West Virginia limited liability company with a principal place of business at 1405 Earl L Core Road, Morgantown, West Virginia. UFI (or persons purportedly working in its name) is, on information

and belief, a reseller of wireless voice and data services. While the Agreement between Telispire and UFI listed UFI as a West Virginia LLC, on information and belief, there is no such LLC by that name incorporated in West Virginia.

3. The defendant Timothy Henson is, on information and belief, a West Virginia resident. Henson executed the Agreement on behalf of UFI and to the extent it exists, is its owner and principal and controls and dominates all its activities.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332 because there is complete diversity of jurisdiction between Telispire and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because Defendants performed acts that constitute doing business in Texas by making a contract in Texas that was performable in whole or in part in Texas, committing a tort in whole or in part in Texas, and otherwise purposefully availing themselves of the benefits and protections of Texas law. Telispire and UFI agreed that Texas law would apply to their contract "and any cause of action or suit based upon or arising in connection with this Agreement must be filed in Wichita County, Texas." (A true and correct copy of the Agreement (without exhibits) is attached hereto as Exhibit A.)

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the Northern District of Texas.

## FACTS

7. Pursuant to the Agreement, executed on November 1, 2019, Telispire made the Services available to UFI. UFI accepted the Services. Pursuant to the Agreement, UFI branded

the Services with its own brand name and resold the Services to its customers under service or subscription agreements between UFI and its customers.

8. UFI authorized Telispire to initiate debit entries from UFI's bank account at MVB Bank in Morgantown, West Virginia through ACH transactions in connection with the Agreement. Telispire successfully submitted ACH transactions to MVB Bank account number 2417529 when the Agreement was signed.

9. Telispire performed its obligations under the Agreement in full.

10. UFI did not comply with its obligations under the Agreement.

11. On April 17, 2020, Telispire learned that a significant number of international long-distance calls were being placed by UFI's customers. Telispire contacted Henson to inform him of the charges, and Henson represented that the usage was legitimate.

12. Usage continued to climb. Telispire called Henson on April 18, 2020. Henson acknowledged the usage and represented to Telispire his customers' ability and willingness to pay the fees. On April 24, 2020 Telispire contacted Henson again because the usage had continued to go up. Henson again acknowledged the usage and his and UFI's obligations to pay the agreed prices for it.

13. UFI's April charges totaled $61,007.62. On May 6, 2020, Telispire informed Henson via letter that UFI must increase its letter of credit pursuant to Sec. 14 of the Agreement. Sec. 14.a requires UFI to provide "Security" of, at minimum, $10,000 and equal to "at least two times (2x) the previous three months average of Wholesale Invoices."

14. Telispire contacted Henson again on May 12 and informed him that usage would be blocked on May 14 unless UFI paid the invoice or provided the increased Security. Henson

represented he would provide an updated letter of credit by June 6 pursuant to the terms of the Agreement.

15. On May 13, Telispire received a draft copy of a new letter of credit from an entity identified as Great Western Investments. Great Western Investments had previously provided the initial $10,000 letter of credit to Telispire on behalf of UFI as required in Section 14.a of the Agreement.

16. Telispire reminded Henson that Telispire required payment or confirmation of the new letter of credit no later than May 14, 2020. Henson requested that Telispire allow the Services to continue through June 6, 2020. Telispire responded that it would require payment or a letter of credit in the amount of $260,000 because there was a total of $160,000 of accrued usage on the UFI account. Telispire then received a revised draft letter of credit, purportedly from Great Western Investments, in the amount of $260,000.

17. Telispire asked Henson and Great Western Investments on May 15 whether the process was complete. Henson represented that the process was complete and Great Western would send a final version of the letter of credit.

18. Telispire followed up on May 18 when it had still heard nothing from Great Western and told Henson that Telispire would turn off the Services.

19. On May 21, Henson represented to Telispire that he needed the Services to remain on. Telispire reiterated the necessity of the new letter of credit. Henson also directed Telispire to pull the $61,007.62 due that day for the May 1, 2020 invoice from UFI's bank account numbered 2417529 at MVB Bank via an ACH transaction. Telispire told Henson that if the usage on the UFI account exceeded $220,000, Telispire would turn off the Services. Telispire gave Henson final

deadlines of May 26, 2020 for receipt of a copy of the final letter of credit and May 29, 2020 for the receipt of the original document.

20. Telispire removed the Services from the UFI subscribers on May 25, 2020 as the total usage had reached $220,000. Henson then contacted Telispire and asked for the Services to be turned back on because the new letter of credit would be in the amount of $260,000. Telispire agreed to the request but reminded Henson that the financial institution needed to provide a copy of the new letter of credit by the next day, May 26.

21. UFI did not provide any proper bank documentation regarding the new letter of credit by May 26, so Telispire removed the Services from the UFI account and locked Henson and UFI out of the back-office software.

22. Telispire was informed on May 27, 2020 that the ACH payment it requested in the amount of $61,007.62 from UFI's account had "bounced" because the bank account numbered 2417529 at MVB Bank in Morgantown, West Virginia, on which the ACH was drawn, was closed.

23. On June 1, 2020, Telispire informed UFI and Henson via letter that UFI had ten (10) days to cure a breach for non-payment. Neither Henson nor UFI responded to this letter or cured their payment defaults.

24. UFI had breached its obligations under the Agreement, *inter alia,* by failing to pay Wholesale Invoices dated May 1, 2020 for $61,007.62; and June 1, 2020 for $225,695.49. As allowed under Section 14.b of the Agreement, Telispire may be able to draw against the letter of credit previously provided by UFI in the amount of $10,000. However, pursuant to that same section of the Agreement, any draw against the Security will not constitute a cure of UFI's breaches of the Agreement by failing to make the Wholesale Invoice payments.

25. Telispire provided on June 13, 2020 a demand for payment in full and a notice of termination of the Agreement.  (Attached hereto as Exhibit B is a true and correct copy of the June 13, 2020 notice of termination and the separate demand for payment.)

26. UFI and Henson have breached their obligations under the Agreement and are liable to Telispire for all its damages suffered thereby.

## COUNT I: BREACH OF CONTRACT

27. Telispire repeats and realleges as if set forth fully herein the allegations of paragraphs 1 through 26 above.

28. The Agreement is a valid and binding contract between Telispire and UFI.

29. Telispire has satisfied its obligations under the Agreement in full.

30. UFI has breached its obligations under the Agreement, *inter alia*, by failing to pay invoices and by failing to increase the Security.

31. UFI's breaches of the Agreement have caused Telispire damages in an amount to be determined at trial.  Telispire should be awarded its damages, plus its reasonable attorney's fees, costs, and interest on all amounts.

## COUNT II: FRAUDULENT MISREPRESENTATION

32. Telispire repeats and realleges as if set forth fully herein the allegations of paragraphs 1 through 31 above.

33. Henson repeatedly represented to Telispire that he would secure the new letter of credit and that he and his customers could and would pay for the charges incurred by the international long-distance calls that began in April 2020, among other charges.

34. On information and belief, Henson never intended to secure a legitimate new letter of credit and never intended to pay for the massive fees incurred by these international calls.  At

AFDOCS/22368879.3/309220-00001

minimum, on information and belief, Henson knew or should have known that he and UFI would not be able to post the required letter of credit and/or that they would be unable to pay for the Services when usage ramped up significantly. Henson repeatedly misrepresented both his ability to post the required additional Security, the ability and willingness of his customers to pay, and the ability and willingness of his and UFI's (if it exists as a separate entity) ability to pay Telispire, all to convince Telispire to continue offering Services to him and UFI and their customers.

35. Telispire relied on Henson's statements, including of a forthcoming new letter of credit, in deciding to continue providing the Services to Henson's customers.  Telispire would have shut down the Services to Henson's and UFI's customers weeks before it ultimately did so if Henson had not continuously misrepresented his, UFI's and their customers' willingness and ability to both pay the fees and, in his and UFI's case, to provide an enhanced letter of credit.

36. Henson's fraudulent misrepresentations have cause Telispire damages in an amount to be determined at trial.

## COUNT III: TO PIERCE THE CORPORATE VEIL

37. Telispire repeats and realleges as if set forth fully herein the allegations of paragraphs 1 through 36 above.

38. Defendant Henson, on information and belief, disregarded corporate formalities in the operation of UFI, including failing to adequately capitalize UFI for the reasonable risks of the corporate undertaking and using UFI as a conduit to procure the Services from Telispire.

39. Defendant Henson used the UFI business entity, if it exists at all, to perpetrate fraud on Telispire for his own direct personal benefit in connection with UFI's contractual relationship with Telispire.

40. Henson should therefore be liable to Telispire for UFI's breaches of the Agreement, if he is not directly liable to Telispire, and the damages to Telispire in an amount to be determined at trial. Telispire should be awarded its damages, plus its reasonable attorney's fees, costs, and interest on all amounts.

## ATTORNEY'S FEES

41. As a result of UFI's breach of the Agreement, Telispire was required to retain the undersigned counsel to prosecute its claim for breach of contract, and an award of attorney's fees is therefore authorized under Chapter 38 of the Texas Civil Practice & Remedies Code.

WHEREFORE, Telispire respectfully requests that this Court award it the following relief:

A. Compensatory damages caused by UFI's breach in an amount to be determined at trial;

B. Damages caused by Henson's fraudulent actions;

C. Reasonable attorney's fees pursuant to Texas Civil Practice and Remedies Code Section 38.001;

D. Its costs and expenses;

E. A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Henson from disposing of his assets;

F. Prejudgment and post judgment interest at the rate established at law; and

G. For such other and further relief as to this Court seems just and proper.